UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NOIL 2018 LLC,
and BASHAR KHADER,

                    Plaintiffs,

                                                    Case No. 21-cv-392-pp

        v.

UNITED STATES OF AMERICA,

                    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 32) AND DISMISSING CASE

On March 29, 2021, the plaintiffs filed a complaint seeking review of the defendant's decision disqualifying them from the Supplemental Nutrition Assistance Program (SNAP) and its decision to penalize the plaintiffs with disqualification rather than charging a hardship civil money penalty. Dkt. No. 1. On the defendant's motion, the court dismissed the plaintiffs' challenge to the fact that they were "reciprocally" disqualified from participating in SNAP as a result of their disqualification from participating in the Supplemental Food Program for Women, Infants and Children program (WIC). Dkt. No. 25. What remains is their challenge to the penalty imposed—disqualification instead of the imposition of a Hardship Civil Money Penalty. Id.

The defendant has filed a motion for summary judgment on the remaining claim. Dkt. No. 32. The court will grant the motion.

1

# I. Facts

## A. Program Background

In 1964, Congress permanently established what was then the Food Stamp Program. Fells v. United States, 627 F.3d 1250, 1252 (7th Cir. 2010) (citing Food Stamp Act of 1964, Pub. L. No. 88-525, 78 Stat. 703 (1964)). The program, which gives the Secretary of Agriculture the authority to promulgate regulations regarding the program itself, was intended to feed low-income individuals as well as strengthen the nation's agricultural economy. Id. (citing 7 U.S.C. §§2013(c), 2021(a)(2)). While each food stamp originally came in the form of a paper coupon, by 2008, at the behest of Congress, the program was made electronic. Id. (citing 7 U.S.C. §2016(h); Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-234; 7 U.S.C. 122 Stat 923, 1092 (2008)). The program then was renamed the Supplemental Nutrition Assistance Program (SNAP). Id.

The WIC program is federally funded and provides certain supplements to pregnant and postpartum women, young children and infants. J.C.C. Food & Liquors v. United States, No. 96 C 6461, 1997 WL 55960, at *1 (N.D. Ill. Feb. 7, 1997). WIC is administered by the Food and Nutrition Service (FNS)—an agency within the Department of Agriculture (USDA)—and gives state and local agencies access to grants from the federal government to fund the distribution of food to eligible participants. Id. The states ensure that grocers authorized to receive WIC benefits comply with regulations. Id. In Wisconsin, the Wisconsin Department of Health Services implements the voluntary WIC program in

accordance with the federal regulations in 7 C.F.R. §§246.1 *et sec.* 7 C.F.R. §246.3(c); dkt. no. 1 at ¶¶11-12.

B.    Factual Background

Plaintiff Bashar Khadar is the owner of the corporate plaintiff, Noil 2018 LLC, located at 4025 West Burleigh Street, Milwaukee, WI 53210. Dkt. No. 40 at ¶9. Khadar applied to the FNS on August 28, 2018 seeking authorization for his business to participate in SNAP. Dkt. No. 22-1 at 20-23. On or about October 20, 2018, the FNS granted authorization to the business as a SNAP retailer in the category of "convenience store." Id. at 69-70. The following observations of the business were recorded by a third-party contractor for the FNS on October 12, 2018:

a.    The store's estimated square footage was 1,056;
b.    The store had no optical scanners and one cash register;
c.    The store had no shopping baskets or carts for customers;
d.    The store did not take telephone orders or provide delivery services;
e.    The store had poor lighting and empty shelves;
f.    The store had no kitchen area and/or food preparation areas, and did not sell hot food;
g.    The store sold food for on-site consumption and had microwaves [for personal use] heating sources;
h.    The store had no deli; and
i.    The store did not sell items such as meat bundles, seafood specials, and/or fruit and vegetable boxes.

Dkt. No. 40 at ¶11 (citing dkt. no. 22-1 at 73-77; dkt. no. 22-2 at 1). The report also stated that the shelves in the store were stocked with bread or cereals; dairy; meats, poultry and fish (fresh, frozen, canned, pickled, dried, processed); and fruits and vegetables (fresh, frozen, canned, picked, dried, 100% juice, puree). Id. at ¶12 (citing dkt. no. 22-1 at 76). The same contractor created a

sketch of the store's checkout, storage, aisles, shelves and stock, and took photographs of the interior and exterior of the store. Dkt. No. 22-2 at 2-30; dkt. no. 22-3 at 1-4. At some point during this period, the plaintiffs were also given authorization to participate in WIC. Dkt. No. 22-3 at 27-40, 42-43.

On April 6, 2020, the Wisconsin Department of Health Services (Wisconsin DHS) issued the plaintiffs a Notice and Order Notice of Termination of WIC Authorization; Notice of Disqualification; Notice and Order of Recoupment; Notice and Order of Forfeiture; Notice of Violation; and Notice of Right to Appeal. Id. at 27. The notice advised the plaintiffs that they had engaged in a pattern of claiming reimbursement for the sale of WIC items that exceeded their documented inventory of those items during the compliance review period of February 1, 2019 to July 31, 2019. Id. at 27-28. The letter notified the plaintiffs that they were disqualified from WIC for three years under Wis. Stat. §253.06(5)(b)3 and Wis. Admin. Code §DHS 149.10(3)(b). Id. at 27. The letter explained that the disqualification period would become effective fifteen days after receipt unless the plaintiffs made a timely request for a hearing. Id. The letter also told the plaintiffs that disqualification from WIC might result in disqualification from SNAP as a retailer and that the disqualification was "not subject to administrative or judicial appeal under SNAP." Id. at 35.

The plaintiffs filed a timely appeal with the Wisconsin DHS on April 16, 2020. Id. at 38. The plaintiffs and the Wisconsin DHS resolved the appeal in July 2020 through a "Stipulated Settlement Agreement." Id. at 37-40.

According to the agreement, the plaintiff was required to pay $54,107.92 via a payment plan while remaining disqualified from WIC for a three-year period, effective July 15, 2020.[1] Id. at 38. On July 22, 2020, the Wisconsin DHS provided the FNS with a copy of the April 6 Notice and order. Id. at 42. The FNS then notified the plaintiffs by letter about their knowledge of the plaintiff's disqualification from WIC and informed them that the disqualification could result in further disqualification from SNAP, citing 7 C.F.R. §278(e)(8). Id. at 44. The FNS letter also stated that it was considering a three-year SNAP disqualification or, alternatively, imposing a monetary penalty. Id. The letter stated that such disqualification was not subject to SNAP administrative review but informed the plaintiffs that they had a right to reply to the charges within ten days from receipt of the letter and that the FNS would consider the reply and any documents provided before making its decision. Id.

In a November 4, 2020 letter, the plaintiffs requested additional time to respond to the FNS. Id. at 48. The letter from plaintiffs' counsel states, "[w]e are aware that in [requesting a 21-day extension] we will forfeit our right to request the issuance of a civil money penalty in lieu of other sanctions." Id. at 48; Dkt. No. 40 at ¶28.[2] The FNS sent a letter to the plaintiffs the following day

---

[1] The plaintiffs assert that "[t]he agreement was intended to be the full resolution of the entire matter, and not trigger a reciprocal disqualification as no language exists in the Agreement which would permit such an act." Dkt. No. 40 at ¶21. Because the plaintiffs do not cite anything in support of this assertion, the court will not accept it as a material fact.

[2] In their response to the defendant's proposed finding of fact ¶28, the plaintiffs admit that the November 4, 2020 letter says what it says, but state that, "as the Defendant is more than aware, such reference is made to Trafficking Civil

5

denying their request, stating, "[t]he time to respond to our letter has been extended to 12/7/2020. (NOTE: The time to request a civil money penalty in lieu of permanent disqualification and to provide the documentation to support such a request **has not** been extended.)" Dkt. No. 22-3 at 52 (original emphasis).

In a letter dated December 7, 2020, the plaintiffs requested a civil money penalty in lieu of disqualification from SNAP, dkt. no. 22-4 at 2-6, which the FNS denied on December 10, 2020, advising the plaintiffs that the disqualification would become effective in ten days unless they made a timely request for review, dkt. no. 22-4 at 17-18. In the December 7, 2020 letter, the plaintiffs provided the following explanation for the background of the store:

> The Store is located in approximately 1,000 square feet in size. The Store is a small grocer and provides the surrounding community with a variety of foodstuffs, nearly all of which qualifies as eligible items under SNAP regulations.
>
> According to the USDA's Profile of Households for the 4th Congressional District of Wisconsin (where the Store is located), there are approximately 23% of households that receive SNAP benefits in the area. Of those participant households, approximately 47.6% have children under 18 years of age (compared to only 25.4% of those households who do not receive SNAP benefits); 29.9% of said households have one or more people aged 60 or greater, and 41.6% of said households have disabled individuals. The median income of those SNAP participants is $20,120. Importantly, the surrounding community, in pertinent part, suffers from poverty at a high rate (54.1%).

---

Money Penalties, which the Agency has no authority to extend deadlines for under 7 C.F.R. §278.6(b)(2)(ii). Further, the Defendant did not treat such communication as an intent to waive a Hardship Civil Money Penalty under 7 C.F.R. §278.6(f)(1)." Dkt. No. 40 at ¶28. As with many of the plaintiffs' other responses to the defendant's proposed findings of fact, these appear to be arguments, not facts or disputes of fact.

Dkt. No. 22-4 at 2. The plaintiffs also cited 7 C.F.R. §278.6(e)(8)(iii) and 7 C.F.R. §289.6(f)(1), each of which addressed Hardship Civil Money Penalties. Id. at 4. In support of their request for a such a penalty in lieu of disqualification, the plaintiffs stated:

> There are twenty stores within a one-mile radius of Noil, however none of them appear to be a supermarket or a large retail food store. Accordingly, it appears that the local SNAP recipients—of which there are many in the surrounding residential neighborhood—rely upon small grocers like Noil for their regular groceries. A number of these residents do not have regular or consistent access to transportation, making Noil an important component of their regular grocery shopping. If the store were to go out of business, there are exceptionally few small grocers in the surrounding area—despite the presence of so many licensed businesses. These stores are mostly convenience stores, tobacco stores, prepared food stores (like Mo's) or combination/others.
>
> Furthermore, my client's location—right next to the public part [sic] utilized by a material portion of the local SNAP participants and near a daycare and a number of churches, makes this store the most convenient for SNAP participants who are going through their regular routines. A disruption of this by removing the store from SNAP, would be devastating to the local SNAP participant population. There simply are no nearby stores to fill the void.
>
> While certainly the WIC issues deserve appropriate redress, a disqualification of the Store is little more than a self-inflicted wound for SNAP over a non-SNAP violation. The best avenue for the participants and the program would be to monetarily penalize the Store under the Hardship provisions and permit the Store to continue to do the good work that it does in SNAP for the local participants.

Id. at 5.

After considering the plaintiffs' letter, the FNS recommended a three-year WIC Reciprocal Disqualification of Noil from SNAP. Id. at 12, 16. The FNS also found that the plaintiffs were ineligible for Hardship Civil Money Penalty, explaining that

7

[b]ased on a review of the store visit and photos dated 10/12/2018; the store is an insignificantly stocked convenience store measuring approximately 1,065 square feet. According to ALERT mapping there are 37 authorized firms located within 1 mile of the subject firm to include 1 superstore and 2 medium grocery stores. There are no special or unusual eligible food products in a review of the photos that would not be available at the larger stores mentioned above. A review of the SVC on file for Lucky & Bill Inc., FNS# 0653242, a medium grocery store located 0.32 miles away shows comparable food stock in larger quantities as well as a fresh meat counter and some fresh produce. Contrary to the attorney's claims, this shows SNAP participants would have ample shopping options to purchase staple food items at other authorized SNAP locations.

Id. at 15.

The defendant provided information on Lucky & Bill Inc. (another store not far from Noil 2018, located at 3500 W. Fond du Lac Avenue in Milwaukee), including photographs, a floor diagram, and information about the store. Dkt. No. 22-3 at 5-26. A person named Samantha Douglas gathered the information for the FNS and found the Lucky & Bill store to be approximately 3,000 square feet and to have shopping baskets available, a meat counter, a kitchen and/or prepared food area, hot food offerings and a deli. Id. at 5-8. The defendant has included in the record reports showing a detailed map and four charts showing the stores in the area around Noil. Dkt. No. 22-4 at 7-11. The plaintiff notes that the review does not describe any comparisons performed between the plaintiffs' prices and those of other stores in the area. Dkt. No. 40 at ¶38.

The December 10, 2020 letter from the FNS to the plaintiffs advised them that Noil was reciprocally disqualified from SNAP for a period of three-years under 7 C.F.R. §278.6(e)(8)(iii) based on its WIC disqualification. Dkt. No. 22-4 at 17. The letter further stated that the plaintiffs were not eligible for a civil

money penalty "because there are other authorized retail stores in the area selling a variety of staple foods at comparable prices," but informed the plaintiffs that they had a right to appeal the decision within ten days. Id. In response, on December 17, 2020 the plaintiffs wrote a letter requesting review of the decision and asking for additional time to file an appeal. Id. at 21. The letter stated that the plaintiffs wished to present new evidence and submit a written argument. Id. On January 8, 2021, the FNS notified the plaintiffs that their request for review had been received, id. at 26, and the plaintiffs filed their appellate brief later than month, id. at 27-36.

The brief included a section titled, "Store Background & Geographic Area," which categorized Noil as a convenience store and repeated many of the statements made in the December 7, 2020 letter to the FNS. Id. at 29-30. The brief also included sections titled "Local Competition," id. at 30, and "Statutory & Regulatory Law," id. at 31, both of which similarly repeated many of the statements the plaintiffs made in the December 7, 2020 letter. The arguments section of the brief contained three subsections: (1) "FNS DID NOT SATISFY § 278.6(e)(8), (2) FNS EXCEEDED THE SCOPE OF § 278.6(e)(8) and (3) HARDSHIP CIVIL MONEY PENALTY. Id. at 32-35. Under the first subsection discussing FNS's duties under §278.6(e)(8), the plaintiffs asserted, among other things, that

> it is entirely unclear to the Appellants whether or not the Department actually made a determination in accordance with the applicable regulations regarding the eligibility of the Appellants for a hardship civil money penalty ("HCMP") as the Department only provided the Appellants with a generic denial of their eligibility for said HCMP.

9

Id. at 33.

Under the subsection discussing the Hardship Civil Money Penalty, the plaintiffs repeated many of the assertions made in their December 7, 2020 letter and argued that

> [t]here are no other comparable stores within a one (1) mile radius to the Store that has a comparable inventory with regard to the quantity and quality to that which is maintained by the Store. Furthermore, in the era of COVID, the impact on households for the loss of EBT at a neighborhood store like this, is more profound than it would have been two years ago. The avoidance of a hardship on public assistance households also played a role in the WIC settlement as well. As such, suspending Appellants for a term of three (3) years would create a significant hardship on the local SNAP households who rely on the remote location of the Store as well as the substantial variety of staple food items sold therein.

Id. at 35.

Their conclusion section included several more assertions regarding their request for a civil money penalty, stating that

> [i]n the alternative, the Appellants respectfully request that this Review Division issue a Hardship CMP in lieu of a three (3) year disqualification. Taking into consideration the safe location of the Store, the lack of nearby authorized retailers, the variety and quantity of foods sold at the Store, coupled with the fact that the Appellants have not been accused of a SNAP violation (but rather a WIC violation), the Hardship CMP would be appropriate to avoid a detrimental impact and undue burden on the surrounding SNAP participants.

Id. at 35-36.

The FNS issued its Final Agency Decision on February 26, 2021, sustaining the previously imposed three-year reciprocal SNAP disqualification. Id. at 37. The FNS determined that there was sufficient evidence supporting the denial of a Hardship Civil Money Penalty and that such a decision was in

accordance with the SNAP regulations. Id. at 38. The decision summarized the plaintiffs' arguments and stated that "full attention and consideration has been given to all contentions presented, including any not specifically recapitulated or specifically referenced herein." Id. at 41. The FNS decision then cited 7 C.F.R. §278.6(f)(1) and listed its findings as follows:

> The case record documents that the Retailer Operations Division determined that there are 37 SNAP authorized stores within a one-mile radius of the Appellant store. These SNAP authorized stores include a combination grocery store, five (5) small grocery stores, a medium grocery store, and a supermarket. Two (2) of the small grocery stores are located only 0.12 and 0.22 miles away from the Appellant store and the medium grocery store is only 0.32 miles away. In addition, the Retailer Operations Division determined that NOIL 2018 LLC does not carry any specialty or international foods that cannot be obtained at any of these other SNAP authorized stores.

Id. at 43. The FNS concluded that its determination disqualifying the plaintiffs from SNAP for three years was proper because the disqualification would not cause hardship to SNAP households. Id. The disqualification was effective as of April 14, 2021. Id. at 46.

C.    Exhibits Outside Administrative Record

The defendant says that two of the eight exhibits attached to the complaint were not included in the administrative record: "Profile of SNAP Households in 2018" (dkt. no. 1-1) and "Records from WIC Proceeding" (dkt. no. 1-2). Dkt. No. 40 at ¶67. It also asserts that five of the exhibits attached to the plaintiff's brief in opposition to the defendant's motion to dismiss were not included in the administrative record: Composite Exhibit C (dkt. no. 17-3), Composite Exhibit D (dkt. no. 17-4), Exhibit E (dkt. no. 17-5), Exhibit F (dkt.

11

no. 17-6) and Exhibit A (dkt. no. 17-7). Dkt. No. 40 at ¶¶68-69. It specifically notes assertions made in Exhibit F, an affidavit by plaintiff Khader, including:

a. Noil 2018 carries 90 of the top 100 items SNAP participants normally purchase and the store is distinguished from others in the area in that it sells fresh fruits and vegetables, fresh meats and cheese, deli meats, and baby formula.

b. Noil, 2018 is distinguished from other stores in the area (and helpful in the era of COVID) because it offers telephone and pickup.

c. There are 19 SNAP authorized stores within a mile of NOIL 2018, none are supermarkets or super stores, and most are gas stations or lesser stocked stores that do not offer the quality or prices offered by Noil, 2018.

Id. at ¶70 (citing dkt. no. 17-6 at ¶¶10, 12-14).

## II.    Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Still, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its

12

motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Id. (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. See Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003) (citing Liberty Lobby, 477 U.S. at 255). "However, [the court's] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." Fitzgerald v. Santoro, 707 F.3d 725, 730 (7th Cir. 2013) (quoting Harper v. C.R. Eng., Inc., 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in her favor." Fitzgerald, 707 F.3d at 730 (quoting Makowski v. SmithAmundsen LLC, 662 F.3d 818, 822 (7th Cir. 2011)).

## III. Analysis

### A. Parties' Arguments

#### 1. *Defendant's Brief*

The defendant spends the first quarter of its brief recapping the criteria underlying the FNA's decision. Dkt. No. 33 at 1-6. It then argues that review of such decisions is limited in scope and typically subject to the arbitrary and capricious standard. Id. at 6. The defendant argues that the court's review is

13

limited to "whether the agency properly applied the regulations." <u>Id.</u> at 7 (citing <u>Simone Enter., LLC v. U.S. Dep't of Agriculture</u>, No. 11-CV-301, 2011 WL 3236222, *3 (E. D. Wis. July 27, 2011); <u>Dasmash Entep., Inc. v. United States</u>, 501 F Supp. 2d 1033, 1039 (W.D. Mich. 2007)). It asserts that the court's review is limited to "whether the agency's sanction determination was arbitrary and capricious." <u>Id.</u> (citing <u>Diaz Sueprmarket, Inc. v. United States</u>, No. 10-30238-KPN, 2011 WL 3705197, *3 (D. Mass. Aug. 23, 2011); <u>H and A Corp. v. United States</u>, No. 14-13783-MLW, 2016 WL 613950, *4-5 (D. Mass. Feb. 5, 2016)). The defendant also argues that the court's review of documents is limited to those that are part of the administrative record. <u>Id.</u> at 9 (citing <u>Little Co. of Mary Hosp. v. Sebelius</u>, 587 F.3d 849, 856 (7th Cir. 2009). It maintains that the court should not consider the documents the plaintiff submitted outside of the administrative record. <u>Id.</u> at 10.

The defendant says that the FNS's decision was not arbitrary or capricious and was otherwise valid under the regulations. <u>Id.</u> It asserts that the FNS considered the plaintiff's statements in its initial review of the plaintiff's request for a Hardship Civil Money Penalty in lieu of disqualification but reached different findings in its review of the record. <u>Id.</u> at 12. It says that the FNS determined that SNAP participants would have sufficient access to staple foods even with the plaintiff's absence from SNAP, specifically pointing to Lucky & Bill, Inc. <u>Id.</u> at 12-13. It makes similar arguments regarding the subsequent administrative review and the final agency decision. <u>Id.</u> at 13-14. It argues that the FNS's decision "followed rationally from the . . . facts," because the FNS

14

found other SNAP authorized stores nearby, and that its conclusion that a three-year reciprocal disqualification of Noil 2018 would result only in a "mere inconvenience" to SNAP recipients in the area was rational. Id. at 15.

The defendant argues that even if the court were to consider documents outside the administrative record (by definition, documents the FNS did not review), the conclusion would be the same. Id. It argues that much of the information in the documents is conclusory and references stores that are not comparable to Noil 2018. Id. at 16-19.

### 2. *Plaintiff's Brief in Opposition*

The plaintiffs begin by asserting that 7 C.F.R. §278.6(f)(1) lays out three elements for determining whether FNS may impose a civil money penalty in lieu of disqualification:

> (1) the store is selling a substantial variety of staple food items; (2) there are no other authorized retail food stores in the area selling as large of a variety of staple food items; and (3) if there are other authorized retail food stores in the area selling as large of a variety of staple food items, are their prices comparable?

Dkt. No. 39 at 6. The plaintiffs insist, without citation, that failure to consider all three elements "renders a decision deficient under the regulation." Id.

The plaintiffs then turn to whether the court can consider evidence outside of the administrative record. Id. They argue that "[t]he laws surrounding SNAP retailer disqualifications and judicial review . . . are not akin to the Administrative Procedures Act," because the APA assumes an evidentiary process and hearing; they assert that matters "where the agency portion of the case is subject to a subsequent trial de novo of the facts and law" are not

15

included in the "evidentiary limitation." Id. (citing 5 U.S.C. §554). The plaintiffs then discuss cases from other circuits in support of this assertion, although they primarily rely on Redmond v. United States, 507 F.2d 1007 (5th Cir. 1975). Id. at 7.

The plaintiffs next argue that that the defendant's case is based upon inadmissible evidence. Id. at 8. According to the plaintiffs, the defendant's use of the "Store Visit Report" is inadmissible hearsay under Federal Rules of Evidence 801 and 802 because it was prepared by a third-party contractor. Id. The defendant asserts that the photos in the report are unverified and lack foundation. Id.

The plaintiffs then return to their argument that the defendant failed to follow its own regulation because it did not consider whether the store was selling a "substantial variety of staple food items" and failed to compare the plaintiffs' items and prices to other SNAP retailers in the area. Id. at 8-9 (citing 7 C.F.R. §278.6(f)(1)). The plaintiffs admit that the defendant "indicate[d] that the store does not have any special or unusual eligible food products that would not be available at a larger store," and "does note that Lucky & Bill, Inc., is a medium grocery store that has comparable food inventory, though they allegedly stocked larger quantities." Id. at 8 (citing dkt. no. 22-4 at 15). The plaintiffs conclude from this that "the Defendant conceded that the Plaintiffs had a substantial variety of staple foods, even if other store's varieties were more bountiful." Id. They point to the Store Visit Report (the one they argue is hearsay), which references the fact that their store carried beef, chicken, eggs,

16

tilapia, salmon, pork—"hardly items that would be expected to be carried by a 7-Eleven." Id. at 8-9. The plaintiffs contend that their store carried more fruits and vegetables than were documented, in addition to dairy, bread and cereal items. Id. at 9 (citing dkt. no. 22-1 at 76).

The plaintiffs argue the defendant failed to conduct a pricing analysis, arguing that the defendant analyzed in detail only one store—Lucky & Bill. Id. They say that "[c]ases where the Agency's decision not to issue an HCMP have been upheld have all involved a consideration of the pricing structure of the comparable stores." Id. at 10. (citing Phany Poeng v. United States, 167 F. Supp. 2d 1136, 1141-42 (S.D. Cal. 2001); Hamdi Halal Market LLC v. United States, 947 F. Supp. 2d 159 (D. Mass. 2013)).

Finally, the plaintiffs argue that they have submitted sufficient evidence to create a genuine issue of material fact. Id. at 11. They point to documents outside of the administrative record relating to the proportion of the local population that is comprised of SNAP recipients and Khader's declaration comparing items in his store and stores in the area. Id.

### 3. *Defendant's Reply*

The defendant begins its reply by reiterating that the arbitrary and capricious standard applies, citing Seventh Circuit decisions and decisions from district courts in the circuit. Dkt. No. 41 at 1.

The defendant then returns to its argument regarding whether the court may consider materials outside of the administrative record. Id. at 2. It provided a brief description of each case cited to by the plaintiffs and

17

concluded that only one of those cases, <u>Affum v. United States</u>, 566 F.3d 1150 (D.C. Cir. 2009), involved a review of civil money penalties. <u>Id.</u> at 2-4. It then discusses a case from the Northern District of Illinois where the court considered material outside of the administrative record when reviewing a civil money penalty, <u>Mehrab No. 1 Corp. v. United States</u>, 837 F. Supp. 2d 943, 945-46 (N.D. Ill. 2011), but argues that the case improperly applied Seventh Circuit law. <u>Id.</u> at 5-6. The defendant asserts that while there is no Seventh Circuit case "that squarely holds that review of a denial of civil money penalty under the arbitrary and capricious standard should exclude review of evidence outside the administrative record, such a principle is logical under the applicable arbitrary and capricious standard of review and consistent with the legislative history of 7 U.S.C. §2023." <u>Id.</u> at 7.

The defendant argues that the court may review the information collected by the FNS third-party contractor, specifically the Lucky & Bill store information and photos. <u>Id.</u> at 8. It argues that the court can take judicial notice of the administrative record under Fed. R. Evid. 201,[3] "because it contains adjudicative facts and is 'not subject to reasonable dispute' because the source's accuracy cannot reasonably be questioned.'" <u>Id.</u> (citing <u>Simone Enter.</u>, 2011 WL 3236222, at *4). Alternatively, the defendant argues that the business records exception to the hearsay rule permits the documents to be considered as the contractor electronically signed a "Photographer's

---

[3] The defendant misstates the name of the rule as "Fed. R. Civ. P. 201," dkt. no. 41 at 8, but its explanation makes clear it is referring to Fed. R. Evid. 201.

Certification Statement" confirming when she visited the store, that she herself took the photographs and that the photos were of Lucky & Bill. Id. at 9 (citing dkt. no. 22-3 at 10 and Fed. R. Evid. 803(6)). It argues that the store visit information has sufficient foundation and bears indicia of reliability. Id. at 9.

The defendant maintains that the FNS's denial of a civil money penalty was not arbitrary and capricious. Id. It asserts that the FNS reviewed information and photos that "included references to Noil 2018's inventory . . .." Id. at 10. The defendant argues that the FNS did not find Noil 2018's stock insufficient or insubstantial; it simply concluded that it was "insignificantly stocked" when there were nearby stores that sold a larger variety and that it sold comparable stock to nearby Lucky & Bill but that Lucky & Bill had larger quantities available. Id. (citing dkt. no. 22-1 at 76; dkt. no. 22-4 at 15).

The defendant asserts that the absence of an explicit comparable price analysis is not fatal if the record shows "ample support" that the denial of the civil monetary penalty was not arbitrary and capricious. Id. at 11. It provides examples of similar information in the record, such as the "Dollar Volumes" of SNAP redemptions for nearby stores (within one mile of Noil), as well as Noil's. Id. at 12 (citing dkt. no. 22-4 at 8-11). It points to the data showing that Noil's dollar value for SNAP redemptions was lower than many of those in the area. Id.

Finally, the defendant addresses the plaintiffs' argument that the evidence presents a material issue of fact. Id. at 13. It argues that the plaintiffs rely on two documents—the "Profile of SNAP Households in 2018" and Khader's

19

affidavit—only one of which should be considered by the court (the Profile). Id.

The defendant repeats that Kahder's affidavit is filled with conclusory

assertions that are entitled to little or no weight. Id. at 14. It then argues that

the plaintiffs' attempt to distinguish Noil from Lucky & Bill and other local

stores fail based on the nature of the SNAP regulations. Id. at 14-15.

B.    Analysis

1.    *Standard of Review*

> Judicial review of the USDA Final Agency Decision is provided for
> under 7 U.S.C. § 2023(a)(13). "If the [store] disputes FNS's finding
> that it violated program regulations, a district court generally
> reviews the matter *de novo*, in order to determine the validity of the
> questioned administrative action." Makey Deli Grocery [Inc. v.
> United States], 873 F. Supp. 2d [516] at 520 [(S.D.N.Y. 2012)]
> (internal citations omitted). Whereas, if the store admits to the
> violations, a district court reviewing the agency decision is limited to
> determining whether the penalty imposed was arbitrary and
> capricious. Id. (internal citations omitted). Furthermore, "the
> applicable statute and regulation plainly preclude judicial review of
> a SNAP disqualification that is premised on an earlier WIC
> disqualification." Guzman [v. U.S. Dept. of Agriculture Food and
> Nutrition Service,] 931 F. Supp. 2d [488] at 495 [(S.D.N.Y. 2013)].

Rekha v. United States, No. 15 CV 7271 (RRM)(LB), 2017 WL 3891647, *5

(E.D.N.Y. Aug. 3, 2017). See also 7 C.F.R. §278.6, stating that when FNS

disqualifies from SNAP a firm that is disqualified from WIC, the disqualification

"[s]hall not be subject to administrative or judicial review." 7 C.F.R.

§278.6(e)(8)(iii)(C).

An action or violation is different than the sanction. Long before the

Eastern District of New York issued the Rekha decision, the Seventh Circuit

had held that the "penalty imposed by the FNS for violations of the Food Stamp

Program may be set aside only if it is arbitrary and capricious." Estremera v.

20

United States, 442 F.3d 580, 585 (7th Cir. 2006) (quoting Brooks v. United States, 64 F.3d 251, 256 (7th Cir. 1995)); Carlson v. United States, 879 F.2d 261, 263 (7th Cir. 1989); McGlory v. United States, 763 F.2d 309, 311 (7th Cir. 1985) ("We have held that a penalty may be set aside only if arbitrary and capricious within the meaning of *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182 . . . (1973)). Other circuit courts have implemented this distinction between a *de novo* review standard for reviewing violations and an arbitrary and capricious standard for reviewing the agency's choice of sanction. Irobe v. United States Dep't. of Agriculture, 890 F.3d 371, 377 (1st Cir. 2018) ("The *de novo* review applies only to the agency's liability determination, not to its choice of a sanction."); Kawran Bazar, Inc., 721 F. App'x. 7, 9 (2d Cir. 2017) ("A sanction does not violate [the arbitrary and capricious] standard when the agency properly adheres to its own settled policy and guidelines.").

Many district courts have applied the arbitrary and capricious standard in reviewing the choice of sanction. See, *e.g.*, Brother Convenience Store, Inc. v. United States Dep't of Agriculture, No. GLR-20-1346, 2021 WL 3911594, *13 (D. Md. Sept. 1, 2021); Cedar Food Mart X. v United States, No. 19-14167(RMB/KMW), 2021 WL 346970, *3, n.5 (D.N.J. Feb. 2, 2021); Astoria Downtown Market v. United States, No. 3:18-cv-01367-AC, 2019 WL 7630953, *2 (D. Or. Dec. 16, 2019); PT Nguyen, Inc. v. United States, No. 18-00062-JWD-EWD, 2019 WL 4601845, *8 (M.D. La. Sept. 23, 2019); Badruddin v United States, No. 1:17-CV-05542-LMM, 2019 WL 3855322, *7 (N.D. Ga. July 15, 2019); My Town Supermarket #1 v. United States, No. 3:17-0921, 2019 WL

3067254, *2 (M.D. Penn. July 12, 2019); <u>SS Grocery, Inc. v. U.S. Dept. of Agriculture, Food and Nutrition Service</u>, 340 F. Supp. 3d 172, 185 (E.D.N.Y. 2018); <u>Dasmesh Enter. v. United States</u>, 501 F. Supp. 2d 1033, 1039 (W.D. Mich. 2007) (noting that, in a case involving reciprocal disqualification, "[e]ven though the Court has jurisdiction to review the agency's decision not to impose a money penalty in lieu of disqualification, the determination of a sanction to be applied by an administrative agency . . . is subject to very limited judicial review."). The court will apply the arbitrary and capricious standard.

2. *Materials Outside the Administrative Record*

The plaintiffs cite to seven cases in support of their argument that the court may consider materials outside of the administrative record. Dkt. No. 39 at 7. Five of those cases concerned an action taken by the government regarding food stamps, rather than a penalty, and allowed consideration of materials outside the administrative record when performing a *de novo* review. <u>Redmond v. United States</u>, 507 F.2d 1007, 1008 (5th Cir. 1975); <u>Ibrahim v. United States Through Dept. of Agriculture</u>, 834 F.2d 52, 52-53 (2nd Cir. 1987); <u>Sims v. United States Dept. of Agriculture Food & Nutrition Service</u>, 860 F.2d 858, 862-63 (8th Cir. 1988); <u>Warren v. United States</u>, 932 F.2d 582, 586 (6th Cir. 1991); <u>TRM, Inc. v. United States</u>, 52 F.3d 941, 944 (11th Cir. 1995) (quoting <u>Redmond</u> but otherwise not addressing issue). Another case, <u>Kim v. United States</u>, 121 F.3d 1269, 1272 (9th Cir. 1997), considered the validity of the penalty in a "trial de novo," concluding that a "trial de novo is a trial which is not limited to the administrative record." As discussed above, the Seventh

22

Circuit has held that district courts must review the choice of penalty under the arbitrary and capricious standard, not the *de novo* standard. The same is true of the seventh case the plaintiffs cite, Affum v. United States, 566 F.3d 1150, 1160-61 (D.C. Cir. 2009), which involved food stamp trafficking in violation of 7 U.S.C. §2021(b)(3)(B). Reading the Food Stamp Act as a whole, the D.C. Circuit found that a *de novo* standard applied to review of the penalty imposed for food stamp trafficking.

The defendant has identified one case from a district court in the Seventh Circuit, Mehrab No. 1 Corp. v. United States, 837 F. Supp. 2d 943, 946 (N.D. Ill. 2011), that reached a similar conclusion. The facts of Mehrab resemble the facts of this case—the store challenged the agency's imposition of a six-month disqualification rather than a civil monetary penalty. Id. at 945. The Mehrab court acknowledged the Seventh Circuit's holding in Estremera that a penalty may be set aside only if it is arbitrary and capricious. Id. at 946. But, citing Estremera, the Mehrab court found that the store was entitled to a trial *de novo* on its factual challenges to the agency's penalty decision. Id. The Mehrab court read Estremera to "stand[] for the proposition that a federal court reviews de novo USDA factual findings even if those findings are pertinent only to the penalty the USDA imposed on a retailer for violating SNAP regulations." Id. at 947. The Mehrab court cited Affum. Id.

The defendant argues that Mehrab extended Estremera beyond its holding. Dkt. No. 41 at 6. Respectfully, this court agrees. The facts of Estremera were as follows:

23

> Plaintiff-Appellant Liduina Estremera . . . owned a grocery store in Milwaukee. One of the clerks in her store violated Food Stamp Program regulations by selling ineligible items to customers. The Department of Agriculture, Food and Nutrition Services . . . permanently disqualified Estremera's store from participating in the Food Stamp Program. Soon after, Estremera sold the store to Sousa Investment, LLC . . . At this time, FNS assessed a $66,000 civil monetary penalty against Estremera, pursuant to 7 C.F.R. § 278.6(f)(2). This regulation allows FNS to impose a penalty when a business that has violated Food Stamp Program regulations transfers ownership of the business. Estremera brought suit in federal district court challenging the penalty.

Estremera, 442 F.3d at 582.

Estremera denied that she had sold the store—the "violation" that made her subject to the $66,000 penalty. Id. at 583. She argued that the district court should have conducted a *de novo* review of three things: whether she sold the store, whether the penalty was appropriate and whether the store had violated the Food Stamp regulations in the first place. Id. at 585. The government, and the Seventh Circuit, agreed that the district court should have reviewed *de novo* whether she sold the store. Id. But the Seventh Circuit held that the district court correctly reviewed the agency's "calculation of Estremera's penalty" under the arbitrary and capricious standard. Id.

Estremera's sale of the store was an alleged violation, so the question of whether she committed that violation was subject to *de novo* review. The agency's determination of what penalty to impose once it determined that she'd committed that violation, however, was subject to review under the arbitrary and capricious standard.

The defendant urges the court to follow Makey Deli Grocery, 873 F. Supp. 2d at 521. Dkt. No. 41 at 6-7. The New York court stated that "the focal

24

point for judicial review [regarding imposition of a penalty by FNS] is the administrative record already in existence." Makey, 873 F. Supp. 2d at 521. The court declined to consider an affidavit submitted by the plaintiff that was not part of the FNS record. Id. at 523. The court cited several cases in support of that decision, including one from the First Circuit which found that "[i]t is particularly inappropriate to accept new evidence on the question of hardship, since the statute specifically commits that determination to [FNS] discretion." Broad St. Food Mkt., Inc. v. United States, 720 F.2d 217, 221 (1st Cir. 1983).

The plaintiffs argue in opposition to summary judgment that the "core matter at issue in this case is whether the Plaintiffs are entitled to the issuance of a Hardship Civil Money Penalty (HCMP)." Dkt. No. 39 at 3. They argue that in declining to issue a civil monetary penalty rather than disqualification, the FNS erred by failing to consider the regulatory factors that allow such a penalty. Id. at 6. The court must review the agency's choice of penalty under the arbitrary and capricious standard. "An agency decision is arbitrary and capricious when the agency 'has relied on factors which Congress had not intended it to consider.'" Zero Zone, Inc. v. United States Dep't of Energy, 832 F.3d 654, 677 (7th Cir. 2016) (quoting Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 664, 677 (2007)). Courts tasked with making this determination look specifically at the basis of the agency's decision. Boutte v. Duncan, 348 F. App'x 151, 154 (7th Cir. 2009) (quoting Ind. Forest Alliance, Inc. v. United States Forest Serv., 325 F.3d 851, 858-59 (7th Cir. 2003)). It does not comport with the nature of the standard that the court would consider

materials outside of the record—materials that the agency did not review or consider when it made its decision.

Because it is applying the arbitrary and capricious standard in reviewing the FNS's decision to impose disqualification rather than a civil monetary penalty, the court will not consider material outside the administrative record.

### 3. *Inadmissible Information*

The plaintiffs next assert that the defendant has asked the court to consider inadmissible hearsay evidence—the Store Visit Report for Lucky & Bill. Dkt. No. 39 at 8 (citing Dkt. No. 22-3 at 5). Magistrate Judge Gorence considered this issue in Simone Enter., 2011 WL 3236222, *4. and determined that "[p]ursuant to Fed. R. Evid. 201, this court may take judicial notice of the administrative record because it contains adjudicative facts and is 'not subject to reasonable dispute' because the source's 'accuracy cannot reasonably be questioned.'" 2011 WL 3236222 at *4 (quoting Fed. R. Evid. 201(b)(2)); see also Black v. Long Term Disability Ins., 582 F.3d 738, 746 n.3 (7th Cir. 2009) (stating in the ERISA context that the Federal Rules of Evidence do not apply and the court "review[s] the entire administrative record, including hearsay evidence relied upon by the administrator.").

Further, although technically the store visit report is hearsay (it is a statement made outside of court and offered for the truth of the matters asserted in it, Fed. R. Evid. 801(c)), it appears to be—as the defendant argues—a record of a regularly conducted activity of the FNS, at or near the time

recorded in it by someone with knowledge and kept in the regular course of the FNS's duties. Fed. R. Evid. 803(6).

To the extent that the plaintiffs "object" to the defendant providing the Store Visit Report to the court, dkt. no. 39 at 8, the court will overrule that objection. The plaintiffs also object to the photos included in the report, arguing that they are not "verified" and that the defendant "has provided nothing in the way of foundation to support their admissibility as required by F.R.E. 1007." Id. But Samantha Douglas, the third-party contractor who prepared the report, certified at 11:20 a.m. on November 7, 2019 that all of the information provided in the report was true, and discussed the photos in the comments. Dkt. No. 22-3 at 8. The court will overrule this objection.

4.    *Arbitrary and Capricious*

The plaintiffs challenge the defendant's decision to issue a disqualification from SNAP rather than a civil money penalty. Dkt. No. 1 at ¶¶36-37. "To determine whether an agency's decision was arbitrary and capricious, we ask if it was 'based on a consideration of the relevant factors and whether there has been clear error of judgment.'" Boutte v. Duncan, 348 F. App'x 151, 154 (7th Cir. 2009) (quoting Ind. Forest Alliance v. United States Forest Serv., 325 F.3d 851, 858-59 (7th Cir. 2003)). "Under this highly deferential standard, we uphold an administrative decision so long as 'the agency's path may be reasonably discerned.'" Id. (quoting Mt. Sinai Hosp. Med. Ctr. v. Shalala, 196 F.3d 703, 708 (7th Cir. 1999)).

Under 7 C.F.R. §278.6(f)(1),

27

FNS may impose a civil money penalty as a sanction in lieu of disqualification when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices.

The use of the word "may" is discretionary; it allows FNS to impose civil monetary penalties rather than disqualification if the following circumstances exist: (1) the plaintiff is selling "a substantial variety of staple food items" and (2) disqualification would cause a hardship to SNAP households because there are no other authorized food retail stores in the area selling "as large a variety of staple food items at comparable prices." Although the plaintiffs assert in their brief that "failure to consider" the elements of §278.6(1)(f) "would render a decision deficient under the regulation," they have cited no statutory or case law supporting that broad statement. They have cited no authority requiring the FNS to grant a hardship civil monetary penalty.

In denying the plaintiffs' first request for a hardship civil money penalty, the defendant explained:

Based on a review of the store visit and photos dated 10/12/2018; the store is an insignificantly stocked convenience store measuring approximately 1,065 square feet. According to ALERT mapping there are 37 authorized firms located within 1 mile of the subject firm to include 1 superstore and 2 medium grocery stores. There are no special or unusual eligible food products in a review of the photos that would not be available at the larger stores mentioned above. A review of the SVC on file for Lucky & Bill Inc., . . . a medium grocery store located 0.32 miles away shows comparable food stock in larger quantities as well as a fresh meat counter and some fresh produce. Contrary to the attorney's claims, this shows SNAP participants would have ample shopping options to purchase staple food items at other authorized SNAP locations.

Dkt. No. 22-4 at 15.

The defendant's final agency decision explained its reasoning for denying the plaintiffs' appeal of the initial decision, stating,

> The case record documents that the Retailer Operations Division determined that there are 37 SNAP authorized stores within a one-mile radius of the Appellant store. These SNAP authorized stores include a combination grocery store, five (5) small grocery stores, a medium grocery store, and a supermarket. Two (2) of the small grocery stores are located only 0.12 and 0.22 miles away from the Appellant store and the medium grocery store is only 0.32 miles away. In addition, the Retailer operations Division determined that Noil 2018 LLC does not carry any specialty or international foods that cannot be obtained at any of these other SNAP authorized stores.
>
> Based on the above analysis, the Retailer Operations Division properly determined that a three-year disqualification of Noil 2018 LLC, a convenience store, would not cause a hardship to SNAP households, as opposed to a mere inconvenience. Therefore, the Retailer Operations Division decision not to assess a hardship CMP in lieu of a three-year disqualification is sustained as appropriate under 7 CFR §278.6(f)(1).

Dkt. No. 22-4 at 43.

The recommendation and final decision show that the defendant found the plaintiffs carried a variety of staple foods but that other stores in the area, particularly Lucky & Bill only 0.32 miles away, carried comparable staple food items in larger quantities. The defendants reported that there were thirty-seven authorized firms in the area and that Lucky & Bill carried comparable quantities of staple food items and a fresh meat counter and some fresh produce. Dkt. No. 22-4 at 15. The defendant also characterized Noil 2018 as a "convenience store" and referred to several stores within half a mile as small or medium "grocery stores," and another within a mile as a "superstore." Id. at 15, 43.

The 2018 store visit is captured in photos, a floor map of the store and several reports. Dkt. No. 22-1 at 64-76; 22-2 at 2-30; Dkt. No. 22-3 at 1-4. The store was about 1,000 square feet. Dkt. No. 22-1 at 70. According to the floor plan, the plaintiffs carried the following staple foods: juice, lunchmeat, milk, eggs, sour cream, biscuits, margarine and butter, canned fish, canned meat, canned vegetables, canned fruit, pasta, soup (with empty shelves), bread, fresh vegetables, rice, flour, corn meal, baking mix, oatmeal, lentils, nuts, cereal, pickles, cereal bars, jerky, frozen ground beef, frozen fish, frozen TV dinners, frozen burritos and infant formula. Dkt. No. 22-2 at 2. The photos reveal stocked shelves, many several items deep, with some, but not many, empty gaps, and more inventory in the back of the store. Dkt. No. 22-2 at 3-27, 29-30; Dkt. No. 22-3 at 1-4. The store contained no storage coolers or freezers, and no stock was kept in a different location. Dkt. No. 22-1 at 74. The plaintiffs did not sell meat bundles, seafood specials or fruit and vegetable boxes, and there was no deli or prepared foods section. Id. at 74-75. The store did not offer delivery and the contractor who completed the store visit report noted poor lighting and empty shelves. Id.

Many of same documents regarding Lucky & Bill are in the record. Dkt. No. 22-3 at 5-25. Lucky & Bill has many staple foods including: lunchables, deli-prepacked meals, frozen veggies, frozen meats, dairy, veggies, cheese, tortillas, eggs, fresh fruit, infant formula, beef jerky, white and wheat bread, ramen, canned fruits, coffee, canned meats, beans, fruit, veggies, cereal, baby food and baby cereal. Dkt. No. 22-3 at 12. The shelves were mostly well

stocked, with notably larger dairy and egg stocks, a small stock of fresh fruit and a large stock of fresh meat. Dkt. No. 22-3 at 13-25. Lucky & Bill had a storage cooler or freezer, offered delivery and sold meat bundles, seafood specials and/or fruit and vegetable boxes. Id. at 6. The reviewer did not note any empty shelves. Id.

Given the proximity of the two stores (0.32 miles), the plaintiff has not raised a genuine issue of material fact as to whether the FNS's decision to issue a disqualification rather than a hardship civil monetary penalty was reasonable. The evidence in the record establishes that it was reasonable for the defendant to determine that there was another authorized food retail store in the areas with a similar variety of staple food items.

The plaintiffs attack the defendant's decision because it did not contain an explicit statement regarding comparable prices from stores in the area. Dkt. No. 39 at 9. They argue that "[c]ases where the Agency's decision not to issue an HCMP have been upheld have all involved a consideration of the pricing structure of the comparable stores." Id. at 10 (citing Phany Poeng, 167 F. Supp. 2d at 1141-42  (stating only that the competing stores "offer comparable product variety, prices, ethnic items and store hours"); Hamdi Halal Market, 947 F. Supp. 2d at 166 (no mention of prices for the comparable stores).

This argument is frivolous—the record provides insight into pricing by providing data on the amount of SNAP redemption income from the surrounding stores. Noil 2018 brought in $60,713.87 worth of SNAP redemptions from June 2020 through November 2020. Dkt. No. 22-4 at 8. Out

31

of the thirty-seven SNAP-authorized stores identified within one mile of the plaintiffs, seventeen brought in more—sometimes much more. See id. at 8-11. This included a store only .12 miles away (the Hakote Food Market, dkt. no. 22-4 at 8) and a very large Pick 'n Save a mile away (dkt. no. 22-4 at 11). Moreover, only one of the stores within a quarter mile of the plaintiffs brought in less SNAP redemption income than the plaintiffs and Lucky & Bill, only 0.32 miles from the plaintiff, brought in over twice as much as the plaintiffs. Id. at 8.

The evidence demonstrates that customers were going to other stores within a short distance of the plaintiffs to purchase SNAP eligible items, supporting the conclusion the prices at those stores were competitive—perhaps even better than comparable.

The plaintiffs have not identified any evidence that creates a dispute of material fact as to the agency's conclusion that that while disqualifying the plaintiffs might constitute an inconvenience for SNAP recipients, it would not constitute a hardship.[4] The defendant's denial of a hardship civil money penalty was not arbitrary and capricious. The court will grant the defendant's motion for summary judgment.

---

[4] The plaintiffs assert that Khader's affidavit identifies genuine disputes of material fact, dkt. no. 39 at 11-12, but the court has declined to consider that affidavit because it is outside the administrative record and was not available to the agency during its review.

## IV.     Conclusion

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 32.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 29th day of September, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

33